■ LORRAINE P. BRODERICK et al., Respondents, v KARL H. SPAETH, JR., et al., Appellants. [660 NYS2d 232] —Mercure, J. Ap-

peal from an order of the Supreme Court (Dawson, J.), entered May 20, 1996 in Clinton County, which denied defendants' motion for summary judgment dismissing the complaint.

Plaintiff Lorraine P. Broderick (hereinafter plaintiff) sustained the injuries forming the basis for this negligence action in a January 24, 1986 automobile accident. The only issue that need be considered on the present appeal is whether the averments contained in a February 8, 1996 affidavit of John Roos, plaintiff's treating physician (as supplemented by Roos' January 20, 1996 medical report, a page from "Harrison's Principles of Internal Medicine" and material prepared by the American College of Rheumatology depicting the 18 "fibromyalgia tender points") were sufficient to raise a factual issue as to whether plaintiff's diagnosed fibromyalgia resulted in a causally related "significant limitation of use of a body function or system" and thus constituted a serious injury within the purview of Insurance Law § 5102 (d). We conclude that the averments were insufficient to raise a legitimate question of fact. We accordingly reverse Supreme Court's order and grant defendants' motion for summary judgment dismissing the complaint.

The record establishes that the January 1986 accident resulted in a soft tissue injury to plaintiff's cervical spine. Plaintiff was not hospitalized and she returned to her employment as a school teacher approximately one week following the accident. After treating with three physicians and a chiropractor during the 30 months following the accident, plaintiff first saw Roos on September 27, 1988. Although Roos treated plaintiff for over seven years, it was not until January 1996 (10 years after plaintiff's accident and immediately following defendants' summary judgment motion) that Roos developed his diagnosis of fibromyalgia. "Fibromyalgia is characterized by diffuse musculoskeletal pain, stiffness, paresthesia, sleep problems and fatigue", Roos states, and cannot be detected by means of any laboratory or X-ray studies. Rather, as explained in material prepared by the American College of Rheumatology, "[t]o qualify for a diagnosis of fibromyalgia, patients must ache all over and have tenderness in at least 11 of [18 fibromyalgia tender points] when 4 kgs. of pressure are applied".

According to Roos, his January 6, 1996 reexamination of plaintiff disclosed "focal tenderness at 12 of 18 tender points", located in plaintiff's upper and lower neck, upper chest, and upper and lower back. He also reported finding tender muscles and tissues in plaintiff's posterior neck, tenderness and spasm in the paraspinal tissues of plaintiff's upper back and painful and restricted motion of plaintiff's neck, which was limited in

forward flexion about 30 degrees, in rotation by 40 degrees to the right and 30 degrees to the left and in side bending in both directions. Finding "significant limitation of motion in [plaintiff's] upper back and neck", which she cannot "move and use * * * without significant pain", Roos concluded that plaintiff had been suffering from fibromyalgia continuously since her motor vehicle accident of January 24, 1986, "but other health care providers have failed to perform the proper diagnostic test and have thus failed to diagnose her condition correctly".

We perceive a number of serious problems with Roos' analysis. First, in the absence of any contrary indication, we must conclude that the findings of "tenderness" at the 12 identified "tender points", which form the sole predicate for Roos' diagnosis of fibromyalgia, are based solely upon plaintiff's statement that the application of pressure caused her discomfort. Fundamentally, such subjective expressions of pain do not of themselves provide a legally competent basis for a diagnosis of injury (see, Tankersley v Szesnat, 235 AD2d 1010, 1012; Dubois v Simpson, 182 AD2d 993, 994-995; Gaddy v Eyler, 167 AD2d 67, 71, affd 79 NY2d 955). Similarly, it appears that Roos' findings of restriction in the range of motion of plaintiff's neck and back are also based solely upon plaintiff's statement that any greater movement caused her pain (see, id.), and he also fails to specify any activities which plaintiff will be unable to perform as a result of the claimed limitation (see, Lanuto v Constantine, 192 AD2d 989, 991, lv denied 82 NY2d 654).

Furthermore, Roos makes no effort to relate plaintiff's restricted range of motion or the objective finding of spasm in plaintiff's upper back to the operative diagnosis of fibromyalgia (see, id., at 991). In fact, according to the medical literature supplied by Roos, the localized symptoms he noted in his examination, limited primarily to plaintiff's neck and upper back, are inconsistent with a diagnosis of fibromyalgia, which requires that a patient "ache all over", a finding that is notably absent. Other recognized symptoms of fibromyalgia are stiffness of the trunk, hip and shoulder girdles, exhaustion, sleep difficulties, irritable bowel and bladder, headaches and dysmenorrhea, none of which are competently established by the record before us.

Finally, as persuasively argued by defendants, Roos provides absolutely no evidentiary support for his bold conclusion that this serious and permanent condition, completely overlooked by a number of medical practitioners for a period of 10 years (by Roos himself for seven of them), was caused by the subject accident (see, Carringi v International Paper Co., 184 AD2d

137, 141; *Dubois v Simpson, supra,* at 995; *see also, McHaffie v Antieri,* 190 AD2d 780). In fact, although the literature provided by Roos acknowledges that "[s]everal causative mechanisms for fibromyalgia have been postulated", the most likely candidates are stated to be a disturbance of normal stage four (non-REM) sleep, psychological factors, muscle abnormalities and autonomic nervous system dysfunction. At most, trauma (along with emotional stress, medical illness, surgery and thyroid disease) has been "implicated" as a trigger. Under the circumstances, we conclude that the record contains no competent expert opinion on the issue of causation.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendants and complaint dismissed.